UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>                                   Plaintiff,<br>     v.<br><br>POLISHED 3 LLC, et al.,<br><br>                                   Defendants.<br>_____<br><br>POLISHED 3 LLC,<br><br>                     Third-Party Plaintiff,<br><br>     v.<br><br>FOWLER GENERAL CONSTRUCTION, INC.<br><br>                     Third-Party Defendant. | No.  2:21-cv-691-BJR<br><br>ORDER ON MOTION TO DISMISS THIRD-PARTY PARTY COMPLAINT |

This matter comes before the Court on a motion to dismiss filed by Third-Party Defendant Fowler General Construction, Inc. ("Fowler").  Dkt. No. 19.  Fowler seeks to dismiss a third-party complaint filed by Polished 3 LLC ("Polished 3").  Fowler also seeks an award of attorneys' fees and costs.

ORDER - 1

Having reviewed the materials submitted by the parties, the Court GRANTS Fowler's motion to dismiss Polished 3's third-party complaint on *forum non conveniens* grounds. The Court also GRANTS Fowler's request for attorney's fees and costs, in an amount to be determined by further order of the Court. The reasons for the Court's decision are set forth below.

## I. Background

The facts recited below are drawn from the original complaint filed in this matter by RLI Insurance Company (Dkt. No. 1) and from the third-party complaint filed by Polished 3 (Dkt. No. 14).

On July 15, 2019, Polished 3 entered into a written subcontract agreement ("the Subcontract") with Fowler to perform concrete polishing work for a project at Kennewick High School in Kennewick, Washington. Polished 3 is a Washington limited liability company based in Shoreline, Washington, whose sole member is Steven Farley. Fowler is a Washington corporation based in Richland, Washington. The Subcontract included a forum-selection clause for disputes arising under the agreement. *See infra* at 5.

In connection with the Subcontract, RLI Insurance Company ("RLI") issued a Subcontract Performance Bond and a Subcontract Labor and Material Payment Bond for the benefit of Fowler and Polished 3. RLI is an Illinois corporation that is authorized to issue surety bonds in Washington State.

On May 14, 2020, Polished 3 executed a General Indemnity Agreement (GIA) in favor of RLI.[1] Under the GIA, Polished 3 agreed to "indemnify and save harmless" RLI from and against

---

[1] RLI appears to allege in its complaint that Steven Farley and his spouse Jeannette Farley also signed the GIA. However, a copy of the GIA is not in the record before the Court on this motion.

ORDER - 2

all liabilities, losses, and expenses by reason of RLI having executed bonds on Polished 3's behalf. Dkt. No. 1 at 3.

On July 13, 2020, Fowler issued a notice of default to Polished 3, which alleged that Polished 3 had failed to perform its scope of work on the project at Kennewick High School in a timely and proper manner. On October 15, 2020, Fowler issued a second notice of default to Polished 3.

Over the summer and early fall of 2020, RLI investigated Fowler's allegations and Fowler's related demands for RLI to take action under the Performance Bond for the Subcontract. RLI's investigation caused it to determine that Fowler's claim under the Performance Bond was valid. RLI paid Fowler $201,836.

On November 10, 2020, RLI notified Polished 3 of the results of its investigation and of RLI's settlement with Fowler. On December 10, 2020, RLI sent Polished 3 a letter demanding reimbursement pursuant to the GIA for RLI's settlement with Fowler. The amount demanded by RLI was $215,419.

On May 26, 2021, RLI filed a complaint in this Court against Polished 3 and Steven and Jeannette Farley. RLI alleges that Polished 3 and the Farleys breached the GIA by failing to indemnify RLI for its losses and expenses incurred in connection with Fowler's claims under the Performance Bond.

On September 8, 2021, Polished 3 filed a third-party complaint against Fowler. In its third-party complaint, Polished 3 maintains that its work under its Subcontract with Fowler complied in all respects with the contract specifications. Polished 3 alleges that Fowler withheld remaining payments to Polished 3, including payment for work that had already been performed. Polished 3 also alleges that Fowler hired another subcontractor to complete the work on the

ORDER - 3

project (as well as extra work that Fowler had refused to authorize Polished 3 to perform) for "exorbitant prices far in excess of the price that Fowler agreed to pay Polished 3 under the Subcontract Agreement." Dkt. No. 14 at 4. Polished 3's third-party complaint alleges that Fowler breached the Subcontract between Fowler and Polished 3 and that Fowler was unjustly enriched as a result of its claim against the Performance Bond.

## II.     Discussion

Fowler seeks dismissal of Polished 3's third-party complaint on several grounds.[2] In the alternative, if its motion to dismiss is not granted, Fowler requests that the Court transfer this case to the U.S. District Court for the Eastern District of Washington pursuant to 28 U.S.C. §1404(a). Fowler also seeks an award of its attorney's fees and costs pursuant to a provision in its Subcontract with Polished 3.

RLI, the plaintiff in the original complaint filed in this matter, indicates that it joins Fowler's motion to the extent that the motion seeks dismissal of the third-party complaint. RLI opposes any attempt to transfer its claims to the Eastern District of Washington.

**A.     Dismissal on *Forum Non Conveniens* Grounds**

**1.     Enforcement of Forum-Selection Clause**

Fowler contends that Polished 3's third-party complaint is subject to dismissal on *forum non conveniens* grounds. To support this argument, Fowler points to the dispute resolution provisions in its Subcontract with Polished 3. The Subcontract provides that disputes of less than

---

[2] Fowler also suggests that Polished 3's third-party complaint was untimely filed. However, as Polished 3 notes, the Court's scheduling order set September 9, 2021, as the deadline for joining additional parties. Other courts have held that the deadline for joining additional parties (a deadline which must be included in scheduling orders pursuant to FRCP 16(b)(3)(A)) is the deadline for filing a third-party complaint. *See, e.g., U.S. Bank. Nat'l Ass'n v. Turquoise Props. Gulf, Inc.*, No. 10-0204-WS-N, 2011 WL 1303134, at *2 (S.D. Ala. Apr. 5, 2011). As a result, the Court does not consider Polished 3's third-party complaint to be untimely filed.

ORDER - 4

$250,000 shall be decided by arbitration, while all other disputes shall be resolved by litigation. For disputes that must be resolved by litigation, the Subcontract Agreement includes the following forum-selection clause:

> The exclusive forum for and venue of such litigation shall be Superior Court, Benton County, Washington. If any such litigation is within the sole jurisdiction of the United States Federal Courts, then the exclusive forum for and venue of such litigation shall be with the United States District Court for the Eastern District of Washington.

Dkt. No. 20-1, Section T.1.c. Fowler argues that Polished 3's third-party complaint must be dismissed on *forum non conveniens* grounds because the forum-selection clause in the Subcontract does not permit Polished 3 to bring the claims asserted in its third-party complaint in this Court.

The Supreme Court has held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the West. Dist. of Texas*, 571 U.S. 49, 60 (2013). A forum-selection clause is "presumptively valid" and "the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude that the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009). As Fowler notes, a party challenging enforcement of a forum-selection clause must show that enforcement of the clause would be "unreasonable under the circumstances," which requires a showing that "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so inconvenient that the complaining party will be practically deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Allianz Glob. Risks U.S. Ins. Co. v. Ershigs, Inc.*, 138 F. Supp. 3d 1183, 1189 (W.D. Wash. 2015).

ORDER - 5

Here, Polished 3 does not argue that the forum-selection clause in the Subcontract Agreement is invalid. Indeed, Polished 3 expressly states in its response to Fowler's motion to dismiss that it "does not object to a transfer of venue or to arbitration." Dkt. No. 21 at 2. Nonetheless, Polished 3 offers several arguments in opposition to Fowler's motion to dismiss on *forum non conveniens* grounds.

Polished 3 argues that "[a] single action is the most efficient way to resolve the respective claims of these three parties" and that "Fowler's request for severance or outright dismissal of the claim of Polished 3 conflicts with the interest in judicial economy." *Id.* Polished 3 also maintains that "[t]he venue clause in the Subcontract should not strip Polished 3 of its right to efficiently resolve this dispute" and that "Polished 3's interest in having all claims decided in one forum should take priority over the interests of Fowler and RLI in insisting on different forums." *Id.* at 7.

However, as Fowler notes, courts have rejected arguments that judicial economy by itself serves as a basis to ignore a valid forum-selection clause. *See, e.g., Premiere Radio Networks, Inc. v. Hillshire Brands Co.*, No. CV 12-10199 CAS (PJWx), 2013 WL 5944051, at *3 (C.D. Cal. Nov. 4, 2013) ("considerations of judicial economy alone do not permit this Court to ignore a 'presumptively valid' forum selection clause."). The Supreme Court has also held that when the parties agree to a forum-selection clause, the court does not consider the parties' private interests in the convenience of the forum when determining whether to enforce the forum-selection clause; instead, the court "may consider arguments about public-interest factors only." *Atlantic Marine*, 571 U.S. at 64. The Ninth Circuit has identified several public interest factors to consider, including "(1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the

ORDER - 6

costs of resolving a dispute unrelated to a particular forum." *Bridgemans Servs. Ltd. v. George Hancock, Inc.*, No. C14-1714JLR, 2015 WL 4724567, at *4 (W.D. Wash. Aug. 7, 2015). Here, Polished 3 has not shown that these factors weigh in favor of disregarding the forum-selection clause in the Subcontract.

Polished 3 also argues that Fowler should be estopped from enforcing the venue provisions in the forum-selection clause against Polished 3. To support this argument, Polished 3 asserts that the Performance Bond issued by RLI on behalf of Fowler and Polished 3 incorporates the provisions of the Subcontract and argues that "Fowler could have included a venue requirement in its settlement with RLI, such that RLI would have to sue Polished 3 (on the inevitable claim under the GIA) in a forum that is consistent with the Subcontract." Dkt. No. 21 at 6-7. However, Polished 3 offers no legal authority whatsoever to support its argument that Fowler should be estopped from enforcing the Subcontract's forum-selection clause under these circumstances.[3]

Therefore, the Court will enforce the Subcontract's forum-selection clause and grant Fowler's motion to dismiss Polished 3's third-party complaint on *forum non conveniens* grounds.[4] This dismissal is without prejudice to Polished 3's ability to seek to refile its claims against Fowler in a forum that is consistent with the Subcontract's forum-selection clause.

---

[3] It should also be noted that RLI is suing Polished 3 for indemnification pursuant to the GIA entered into between RLI and Polished 3. If Polished 3 had wished to ensure that disputes under its GIA with RLI would be resolved in the same forum as disputes under its Subcontract with Fowler, Polished 3 could have negotiated for such a forum-selection clause in the GIA.

[4] Fowler also argues that Polished 3's third-party complaint is subject to dismissal because Fowler is not a proper third-party defendant under FRCP 14. Dkt. No. 19 at 9-11. It is not necessary for the Court to reach this argument because the Court is dismissing the third-party complaint under the doctrine of *forum non conveniens*.

ORDER - 7

## 2. Transfer to a Different Court is Not Appropriate

In its response to the motion to dismiss, Polished 3 proposes that the Court "transfer the entire case to the Eastern District of Washington rather than sever the third-party claim of Polished 3 against Fowler." Dkt. No. 21 at 7. However, the Subcontract's forum-selection clause provides that a dispute arising from the Subcontract is to be litigated in the Eastern District of Washington only if the case is within the sole jurisdiction of the federal courts. Here, Polished 3's third-party complaint against Fowler does not raise claims that are subject to the sole jurisdiction of the federal courts. As a result, the Eastern District of Washington is not an appropriate forum under the forum-selection clause for litigating Polished 3's claims against Fowler under the Subcontract. The Court declines Polished 3's proposal to transfer the entire case to the U.S. District Court for the Eastern District of Washington.

Under the Subcontract's forum-selection clause, disputes exceeding $250,000 are to be litigated in Benton County Superior Court if they are not within the sole jurisdiction of the federal courts. Here, it is not apparent from the face of Polished 3's third-party complaint whether its claims exceed $250,000. However, even if the Court were able to determine that Polished 3's claims against Fowler exceeded $250,000, the Court lacks the authority to transfer Polished 3's third-party complaint to state court. *See, e.g., HNA LH OD, LLC v. Local House Int'l, Inc.*, No. 21-cv-21022, 2021 WL 4459404, at *9 n.5 (noting "[n]o federal statute empowers a district court to transfer a civil action originally filed in federal court to a state court.").

## 3. Referral to Arbitration is Not Appropriate

The Court also declines to refer Polished 3's third-party complaint to arbitration. As noted above, the forum-selection clause in the Subcontract requires arbitration of disputes of less than $250,000, but it is not clear from the face of Polished 3's third-party complaint whether its

ORDER - 8

claims against Fowler are under $250,000. Under these circumstances, the Court will dismiss Polished 3's third-party complaint, rather than compel arbitration of its claims against Fowler. *See, e.g.*, *Atlantic Marine*, 571 U.S. at 66 n.8 ("a successful motion under *forum non conveniens* requires dismissal of the case"); *Allianz*, 138 F. Supp. 3d at 1191 n.7 (declining to consider request to compel arbitration after Court granted motion to dismiss on *forum non conveniens* grounds).

### B.   Fowler's Request for Attorney's Fees and Costs

Fowler also requests its attorney's fees and costs pursuant to a contractual fee provision in its Subcontract with Polished 3. The Subcontract provides "[a]s between the parties to this Subcontract, the prevailing party in any litigation, or arbitration, shall be entitled to an award of its attorney fees and costs incurred." Dkt. No. 20-1, Section T.3.

Fowler argues that by obtaining dismissal of Plaintiff's third-party complaint, it is the "prevailing party" under the terms of the Subcontract's attorney's fee provision. In response, Polished 3 notes that it would still be able to prosecute its claims against Fowler if its third-party complaint is dismissed without prejudice, and argues that "[p]revailing party status is determined at the conclusion of litigation." Dkt. No. 21 at 8.

The parties' briefing on Fowler's request for attorneys' fees and costs focuses primarily on federal case law, and includes no citations to case law from Washington State courts. However, "[i]n an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Commc'ns, Inc.. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999); *see also Ahmadi Abhari v. Victory Park Capital Advisors, Inc.,* No. 20-05734, 2021 WL 3598740, at *2 (C.D. Cal. Jan. 21, 2021) ("[w]hen determining the applicability

ORDER - 9

of an attorneys' fee provision in a contract, federal courts must apply state law."). As a result, the Court must look to Washington State law to determine whether Fowler is entitled to an award of attorney's fees and costs.

Washington courts have indicated that "[a]s a general rule, a prevailing party is one who receives an affirmative judgment in its favor." *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 242 P.3d 1, 16 (Wash. App. 2010). However, "a defendant can recover as a prevailing party for successfully defending against the plaintiff's claims." *Id.* Under Washington law, "[w]hen a contract includes a bilateral attorney fees provision, 'it is the terms of the contract to which the trial court should look to determine if such an award is warranted.'" *Id.* Here, the term "prevailing party" is not defined in the Subcontract. However, the Subcontract broadly provides for an award of attorney's fees and costs to "the prevailing party in any litigation, or arbitration." Dkt. No. 20-1, Section T.3.

In *Walji v. Candyco, Inc.*, 787 P.2d 946, 947-48 (Wash. App. 1990), the Washington Court of Appeals held that when a plaintiff voluntarily dismisses a lawsuit, the defendant may be entitled to an award of fees under a contractual provision that entitles the "prevailing party" to an award of attorney's fees. The *Walji* court noted that "[a]t the time of a voluntary dismissal, the defendant has 'prevailed' in the common sense meaning of the word," even if the dismissal is without prejudice to the plaintiff refiling its claims. *Id.* at 948. The court further noted:

> Since the case may never be renewed, it is essential to apply the attorney fee provision of the lease at the time of dismissal to effectuate the intent of the parties. If the litigation is renewed, the attorney fee provision might once more come into play and be applied to the plaintiff's benefit. There would be no inconsistency in such a result. This interpretation will inhibit frivolous or badly prepared lawsuits and will protect parties from the expense of defending claims which do not result in liability.

*Id*.

ORDER - 10

Given *Walji's* holding awarding contractual attorney's fees to the defendant as the prevailing party, the Court finds that Fowler should be entitled to its reasonable attorney's fees and costs in obtaining dismissal of Polished 3's third-party complaint here. The court in *Walji* did not require the defendant to obtain dismissal of the plaintiff's complaint with prejudice or on the merits in order to be awarded attorney's fees under a bilateral contractual provision that awards attorney's fees to the "prevailing party." Because *Walji* provides that a defendant may be awarded contractual attorney's fees as the prevailing party in a case where the plaintiff voluntarily dismisses its lawsuit without prejudice, Fowler should be able to receive its attorneys' fees as a prevailing party for obtaining dismissal of Polished 3's third-party complaint without prejudice on *forum non conveniens* grounds. By obtaining dismissal of Polished 3's third-party complaint, Fowler has prevailed "in the common sense meaning of the word" in the parties' litigation in this Court. *Id.* The litigation between Polished 3 and Fowler is over in this Court. Polished 3 may or may not seek to pursue its claims against Fowler through arbitration or a new case in Benton County Superior Court. However, the *Walji* court observed that when it is possible that a case may not be renewed, "it is essential to apply the attorney fee provision . . . at the time of dismissal to effectuate the intent of the parties." *Id*.

The Court notes that in *Moore v. Flateau*, 225 P.3d 361, 366 (Wash. App. 2010), the Washington Court of Appeals declined to award fees pursuant to a contractual attorney's fee provision to a defendant who prevailed on a motion to change venue. The *Moore* court briefly explained its reasoning as follows:

> This provision grants fees for success in an action brought under the contract. We do not believe that success in one aspect of the case entitles a party to fees at this time. The ultimate disposition of the case will determine if any party is entitled to fees under the contract.

ORDER - 11

*Id.* However, immediately after declining to award fees based on the contractual fee provision, the *Moore* court proceeded to grant the defendant's request for attorney's fees under RCW 4.12.090(1), a Washington State statute which provides that "if the court finds that the plaintiff could have determined the county of proper venue with reasonable diligence, it shall order the plaintiff to pay the reasonable attorney's fee of the defendant for the changing of venue to the proper county."

The Court finds that *Moore* is distinguishable from the case at hand.  It was not necessary for the *Moore* court to even reach the defendant's request for contractual attorney's fees, since the defendant was entitled to such fees by Washington statute.  Furthermore, the defendant's successful motion to change venue in *Moore* did not result in the dismissal of the plaintiff's complaint; it only resulted in changing the venue of the plaintiff's case in state court from one county superior court to another.  Here, by contrast, Fowler's motion to dismiss has resulted in the dismissal of Polished 3's third-party complaint in this Court.  If Polished 3 chooses to continue to pursue its claims, it will have to refile a new proceeding in a different forum (either arbitration or state court).  By obtaining dismissal of Polished 3's third-party complaint, Fowler has "prevailed" in a way that is more analogous to the defendant in *Walji* than to the defendant in *Moore*.

Accordingly, the Court finds that Fowler is entitled under the Subcontract to an award of the reasonable attorney's fees and costs that it incurred in defending against Polished 3's third-party complaint in this Court, and directs Fowler to file a motion to support its requested amount of attorney's fees and costs within 14 days of the date of this Order.

ORDER - 12

### III. Conclusion

For the foregoing reasons, the Court GRANTS Fowler's motion to dismiss Polished 3's third-party complaint on *forum non conveniens* grounds (Dkt. No. 19). The Court further finds that Fowler is entitled to an award of its reasonable attorney's fees and costs, in an amount to be determined by further order of the Court.

Dated: January 27, 2022.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge